## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. MERTZ, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Case No.  04-55 Erie** |
| | ) | |
| DONZI MARINE, INC. and | ) | |
| AMERICAN MARINE HOLDINGS, | ) | **Judge Cohill** |
| INC., in its own right and d/b/a | ) | |
| DONZI MARINE, | ) | |
| | ) | |
| **Defendants and** | ) | |
| **Third Party Plaintiffs**, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOAT STORE, | ) | |
| | ) | |
| **Third Party Defendant** | ) | |
| | ) | |

## OPINION AND ORDER

Pending before this Court is the Motion for Summary Judgment filed by Defendants/

Third Party Plaintiffs Donzi Marine Inc. and American Marine Holdings, Inc. ("the Donzi

Defendants") (Doc. # 15). Plaintiff Thomas E. Mertz has sued the Donzi Defendants for breach

of express and/or implied warranty, violation of Pennsylvania's Unfair Trade Practices and

Consumer Protection Law ("the UTPCPL"), and violation of the Magnuson-Moss Warranty

Improvement Act, 15 U.S.C. §§ 2301-2312. Plaintiff had purchased a 2003 Donzi 38ZX Daytona

motorboat ("the Boat") manufactured by the Donzi Defendants; he claims that the Boat is

defective in numerous ways.

## I. Standard of Review.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, fail to demonstrate a genuine issue of material fact and thus, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).

The moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry the burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct 2548 (1986). The nonmoving party must then go beyond the pleadings and, by affidavits, depositions, answers to interrogatories, and admissions on file, designate facts showing that a genuine issue of material fact remains for trial. Id. at 324. In deciding a motion for summary judgment, the facts must be viewed in a light most favorable to the nonmoving party and all inferences must be drawn in that party's favor." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).

## II. Statement of Relevant Facts.

Viewing the facts of record in a light most favorable to the Plaintiff as the non-moving party, following is a summary of the relevant facts of record.

On May 8, 2002 Plaintiff purchased the 2003 Donzi 38zx Daytona Boat from The Boat Store, which is located at 10170 West Main Road, North East, Pennsylvania. Purchase Agreement. The Boat Store is a corporate entity; the sole shareholder is Gregory Szczesny ("Szczesny"). Szczesny Deposition, p. 9. Plaintiff paid $322,255.00 for the Boat, including optional equipment and accessories. Purchase Agreement. The Donzi Defendants manufactured

the boat. Id.

Plaintiff signed a Purchase Agreement. Plaintiff's Deposition, p. 50. The Purchase
Agreement was also signed by Szczesny on behalf of The Boat Store. Purchase Agreement.

An important issue here is whether certain language in the Purchase Agreement served to
exclude the defendants from liability for defects in the Boat.

The most legible version of the Purchase Agreement provided to the Court by the parties
was the original customer copy of the Purchase Agreement that was provided by Plaintiff's
counsel on or about December 26, 2006. Both the front and the back of this copy of the Purchase
Agreement is written on pink paper. The type on the front of the Purchase Agreement is in blue
ink and is fully legible.

There also is contract language written on the back of the Purchase Agreement. The type
on the back of the Purchase Agreement is in black ink and is virtually illegible. Some of the
provisions on the back of the Purchase Agreement are in all capital letters, but none are in bold
type. The back of the Purchase Agreement is titled "ADDITIONAL TERMS AND
CONDITIONS." This side of the Purchase Agreement contains the following relevant language.
First, it states "The Order on the reverse side hereof is subject to the following terms and
conditions all of which have been mutually agreed upon:" There are then 12 paragraphs of
information. Paragraph 9 states "Warranties. EXCEPT TO THE EXTENT REQUIRED BY
STATE LAW, SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR
IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR
FITNESS FOR A PARTICULAR PURPOSE. All warranties covering the equipment referenced
on page 1 of the Agreement, if any, are made by the manufacturer. A copy of any applicable
manufacturer's warranty shall be delivered by Seller to Buyer." After the 12 numbered

3

paragraphs, is the following concluding sentence: "THIS DOCUMENT CONTAINS THE
ENTIRE AGREEMENT BETWEEN THE PARTIES. NO OTHER REPRESENTATIONS,
INDUCEMENTS OR PROMISES (WRITTEN OR VERBAL) HAVE BEEN MADE WHICH
ARE NOT SET FORTH IN THIS AGREEMENT."

Plaintiff did not read Paragraph 9 on the back of the Purchase Agreement when he bought
the boat. Plaintiff's Deposition, p. 52. He testified that he did not read the back side because it
was so illegible. Id. at p. 7 9.

The Donzi Defendants issued at least two warranties regarding the Boat. The first
warranty was a "Donzi Marine Limited Warranty" which contains a 5 year limited hull warranty
and a 1 year components warranty. Section 3 of the "Donzi Marine Limited Warranty," the 5
year limited hull warranty, entitled "Exclusions," stated:

[L]imited warranty does not cover and does not extend to any of the following:

. . .

(d) fading, chalking, blistering or cracking or any varnish, gelcoat, paint, anti-
fouling coating or metallic finish;

. . .

(f) tears, cracking, fading, discoloration or mildewing of curtains, cushions, top,
headliners or other fabric or upholstered items;

. . .

(g) ADVERTISING REGARDING ANY PERFORMANCE
CHARACTERISTIC OF THE BOAT OR ITS COMPONENTS SHALL BE
CONSIDERED AN ESTIMATE ONLY AND SHALL NOT BE RELIED UPON
AS EXPRESS WARRANTY OR AS A BASIS OF THE BARGAIN FOR THE
BOAT OR ITS COMPONENTS

. . .

(l) components not manufactured by Donzi, whether or not warranted by the other
manufacturer, even if installed by Donzi, including but not limited to engines,

4

propellers, generator sets, controls, electronics, batteries, appliances and air conditioning.

Donzi Marine Limited Warranty, sec. 3 (d),(f)(g)(and (h). Section 4 of the Donzi Marine Limited

Warranty provided:

> THIS WARRANTY, AND THE RIGHTS AND REMEDIES UNDER IT, IS
> EXCLUSIVE AND IS GIVEN IN PLACE OF ALL OTHER WARRANTIES,
> WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED
> WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR
> PURPOSE, WHETHER ARISING BY LAW, CUSTOM, CONDUCT, OR
> USAGE OF TRADE. PURCHASER'S REMEDIES SHALL BE LIMITED
> HEREIN AND DONZI SHALL NOT BE LIABLE FOR ANY INCIDENTAL,
> CONSEQUENTIAL OR INDIRECT DAMAGES OR LOSSES RESULTING
> FROM DEFECTS.

Id. at sec. 4.

The second Donzi warranty relevant to the Boat was the "Z-Care 5-Year Limited

Warranty." This warranty states:

> OTHER THAN AS SET FORTH HEREIN, THERE ARE NO OTHER
> WARRANTIES EITHER EXPRESSED OR IMPLIED UNDER THIS
> PROGRAM. ALL OTHER WARRANTIES UNDER THIS PROGRAM,
> EXPRESS OR IMPLIED INCLUDING IMPLIED WARRANTIES OF
> FITNESS, MERCHANTABILITY AND WORKMANSHIP ARE EXPRESSLY
> EXCLUDED. NEITHER DONZI NOR THE DEALER SHALL HAVE ANY
> RESPONSIBILITY FOR LOSS OR CONSEQUENTIAL DAMAGES. THE
> REMEDIES PROVIDED HEREIN ARE THE SOLE AND EXCLUSIVE
> REMEDIES PROVIDED BY THIS Z-CARE LIMITED WARRANTY.

Z-Care 5-Year Limited Warranty, p. 9. Additionally, within the Z-Care 5-Year Limited

Warranty, there was a section entitled "What Is Not Covered." Included within this section was:

> 1. Any parts, components or services not specifically listed in this Z-Care Limited
> Warranty booklet. If the component is not listed as a covered component, it is not
> listed.
>
> 2. Any repair, replacement or teardown costs that have not been authorized by
> Donzi.

3. Any loss resulting from the failure to perform all periodic maintenance services, including off-season storage procedures as recommended by the manufacturer.

. . .

5. Any failure arising from any external cause, including but not limited to: misuse, abuse, neglect, accidents, collision, grounding, electrolysis, cosmetics, deterioration, permeation, weathering, rotting, contact with foreign materials, submersion, missiles, falling objects, fire, theft or larceny, explosion, water, rodents, Zebra Mussels, etc., malicious mischief or vandalism, riot or civil commotion, nuclear contamination, freezing, smoke, acts of God. Any pollution, clean up, EPA charges or fines incurred due to a covered mechanical breakdown.

Id. at p. 11.

The Boat Store did not provide Plaintiff with either of the Donzi warranties at the time the Purchase Agreement was signed by Szczesny and Plaintiff. Mertz Affidavit, ¶ 2. After signing the Purchase Agreement, but before the Boat was delivered to Plaintiff, The Boat Store gave Plaintiff a photocopied Z-Care 5-Year Limited Warranty manual. Id. At the time Plaintiff received the photocopied Z-Care 5-Year Limited Warranty manual, he was aware that it did not relate to the particular boat he was purchasing. Id. In other words, it was not the Z-Care 5-year Limited Warranty manual for his Boat. Id. Plaintiff did not receive a copy of the Donzi Marine Limited Warranty or the Z-Care 5-Year Limited Warranty applicable to the Boat until after the inception of this lawsuit. Id.

Prior to Plaintiff purchasing the Boat, Szczesny and Plaintiff had the following exchange about the Z-Care 5-Year Limited Warranty:

A. Well we basically went over the Donzi line and showed him what kind of boats we had, went over warranty issues. And the big thing with Donzi was the five-year Z-Care warranty at the time.

Q. And that was explained to him?

6

A. Yes.

Q. When you say that was a big thing, you mean for Mr. Mertz or that was a big thing in your discussion with him?

A. For Mr. Mertz.

Q. What, if anything, did he say about that; do you remember?

A. It was a definite benefit over the other boating lines.

Szczesny Deposition, pp. 22-23.

Additionally, prior to purchasing the Boat, Plaintiff received brochures featuring the Donzi 38ZX Daytona motorboat from Donzi and The Boat Store. Plaintiff's deposition, pp. 60-61. These brochures stated that the 38ZX was "capable of speeds in excess of 90 miles per hour" or "100 miles per hour (with optional power)" and stated that the headroom in the cabin portion of the boat was 6 feet, 3 inches. Donzi Brochures. In fact, the Boat is not "capable of speeds in excess of 90 miles per hour" or "100 miles per hour (with optional power);" the maximum speed at which Plaintiff and Szczesny have clocked the Boat is well under 90 m.p.h. Mertz Affidavit, ¶ 3. Furthermore. the headroom in the cabin portion of the boat is 5 feet, 11 inches. Plaintiff's deposition, p. 95.

Also prior to purchasing the Boat, Plaintiff went to Donzi's headquarters in Florida. Plaintiff's Deposition, p. 45. While there, a Donzi salesman, Josh Stickles, told Plaintiff that the 2003 verison would be identical to the 2002 version except they changed the outdrives. Id. at pp. 61, 66. This was not true with respect to the headroom in the Boat because the headroom for the 2003 version was less than 6 feet while the headroom for the 2002 version was in excess of 6 feet. Id. at p. 62. Plaintiff is six feet tall and thus, this clearance was important to him. December 12, 2003 letter, p. 3.

7

Also prior to purchasing the boat, Plaintiff reviewed: (1) a March 1999 article from Powerboat Magazine wherein it was stated that "Donzi Marine's 38ZX is an 80-mph beamy performer. . . ." and that the top speed for the Donzi 38ZX was 78.2 mph and (2) a January 2000 article from Powerboat Magazine wherein it was stated that the Donzi 38ZX was rated at a maximum speed of 83.2 mph. Id. at pp. 37, 40 and 68.

Plaintiff bought the Boat because he wanted something bigger and faster. Plaintiff's Deposition, p. 34. He also wanted something that would take the water better, ride smoother in rough water. Id. at p. 35. He was looking for more accommodation. Id. at p. 36. His objective was to tour the Great Lakes. Id. The 38ZX had more room internally than his old boat. Id. He wanted a boat that could cruise at 70 m.p.h. Id. at p. 37. He picked the Donzi boat over all others in part because it had the most interior room. Id. at p. 43. Plaintiff understood in general that being bigger meant it was also heavier. Id. at p. 43-44.

Plaintiff understood he was buying a 2003 Donzi 38zx model. Id. at p. 63. It was not until 2003, after Plaintiff had already purchased the Boat, that The Boat Store gave him a copy of a brochure that explained what was the height in the cabin portion of the 2003 Boat. Id. at p. 63. The Boat Store told Plaintiff that they had just received the material. Id. at p. 64. Plaintiff never specifically told anyone at Donzi that the boat had to have headroom in excess of six feet. Id. at p. 66.

### III. Legal Analysis.

#### A. Plaintiff's Breach of Warranty Claims.

Defendants' main argument with respect to the Plaintiff's breach of express and/or implied warranty claims is that any such warranties were limited/disclaimed by the language contained in the following 3 documents: (1) the Donzi Marine Limited Warranty; (2) the Donzi

8

Z-Care 5-Year Limited Warranty; and (3) the Purchase Agreement signed by Plaintiff when he purchased the Boat.

We hold, as did the court in Hornsberger v. General Motors Corp., 929 F.Supp. 884, 889-90 (E.D. Pa. 1996) that because "warranty disclaimers and exclusions are not favored in the law," "a warranty limitation stated in printed material given by a seller to the buyer after the sale is not binding." Id. at 889-90. Here, Plaintiff testified that he had never seen the Donzi Marine Limited Warranty until after he filed this lawsuit against the Defendants. See Plaintiff's deposition, pp. 84-85. Similarly, Plaintiff stated that he did not receive a copy of any Donzi Z-Care 5-Year Limited Warranty until after he had signed the Purchase Agreement to buy the Boat, and even then, when he did receive a copy of a Donzi Z-Care 5-Year Limited Warranty, he knew at the time he received said copy, that it was not the Donzi Z-Care 5-Year Limited Warranty applicable to his Boat. Mertz Affidavit, ¶ 2. In so holding, we acknowledge Szczesny's testimony in his deposition wherein he testified that he had gone over the Donzi warranties with Plaintiff. See infra., pp. 6-7, quoting Szczesny Deposition, pp. 22-23.

Viewing this testimony in a light most favorable to Plaintiff, however, this evidence is not enough for the Court to conclude that Szczesny informed Plaintiff of all relevant limitations and disclaimers contained in the Donzi Z-Care 5-Year Limited Warranty prior to Plaintiff purchasing the Boat. We cannot conclude that Plaintiff was put on notice that the Donzi Z-Care 5-Year Limited Warranty effectively disclaimed any implied warranties relative to the Boat.

Viewing the facts in a light most favorable to Plaintiff, neither the Donzi Z-Care 5-Year Limited Warranty nor the Donzi Marine Limited Warranty were given to Plaintiff at the time he purchased the Boat and therefore, they are not binding upon him.

9

Turning to the effect of the contract language contained on the back of the Purchase

Agreement on Plaintiff's breach of warranty claims, paragraph 9 states, *in toto,* "Warranties.

EXCEPT TO THE EXTENT REQUIRED BY STATE LAW, **SELLER** EXPRESSLY

DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED

WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

All warranties covering the equipment referenced on page 1 of the Agreement, if any, are made

by the **manufacturer**. A copy of any applicable manufacturer's warranty shall be delivered by

Seller to Buyer" (emphasis added by Court). The Court interprets this contract language to be a

statement only that the seller, The Boat Store, was disclaiming any express or implied warranties

with respect to the Boat, not that the Donzi Defendants, the Boat's manufacturer, were

disclaiming any express or implied warranties with respect to the Boat.

Alternatively, even if the limitation/disclaimer language contained in the Purchase

Agreement was applicable to the Donzi Defendants, we find that language was not conspicuous,

at least not on the document provided to the Court for review.

> 13 Pa.C.S.A. § 1201 states in pertinent part:
>
> **"Conspicuous."** A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.
>
> A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous.
>
> Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. But in a telegram any stated term is conspicuous.
>
> Whether a term or clause is conspicuous or not is for decision by the court.

Id. The district court in Hornsberger succinctly explained:

> implied warranties can be disclaimed or modified . . . . See Thermo King Corp. v. Strick Corp., 467 F.Supp. 75, 77 (W.D. Pa. 1979), aff'd, 609 F.2d 503 (3d Cir.

1979) ("implied warranties can be modified or excluded . . . , in the case of a
writing, by appropriate 'conspicuous' language."). Conspicuousness is a question
of law for the court. Id. "The test is whether a reasonable person against whom the
modification or exclusion is to operate ought to have noticed it." Id.; UCC
§1201(10). Under Pennsylvania law, some characteristics to consider in
determining whether a reasonable person should have noticed a disclaimer of
warranty include: (1) the placement of the clause in the document; (2) the size of
the disclaimer's print; and (3) whether the disclaimer was highlighted or called to
the readers's attention by being in all caps or a different type style or color.
Walnut Equipment Leasing Co., Inc. v. Moreno, 643 So.2d 327, 333 (La.App.
1994).

Id. at 888-889.

Here, the most legible version of the Purchase Agreement provided to the Court by the

parties was the original customer copy of the Purchase Agreement that was provided by

Plaintiff's counsel on or about December 26, 2006. Both the front and the back of this copy of

the Purchase Agreement is written on pink paper. The type on the front of the Purchase

Agreement is in blue ink and is fully legible. The type on the back of the Purchase Agreement is

in black ink and is barely legible. While the warranty paragraph is capitalized in part, none of the

type on the back of the Purchase Agreement, including the language relevant to the warranty

issue, is in bold type or otherwise stands out. Under these circumstances, we find that a

reasonable person against whom the modification or exclusion is to operate should not be

expected to have noticed it. Accordingly, it cannot be said that any implied warranties with

respect to the Boat were disclaimed based upon the language contained on the back of the

Purchase Agreement.

The Donzi Defendants raised two additional arguments in support of their motion for

summary judgment on Plaintiff's breach of warranty claims: (1) Plaintiff did not rely on

Szczesny's representations to Plaintiff about the speed of the Boat in making his decision to

11

purchase the Boat, and (2) that because Plaintiff read two Powerboat Magazine articles, one from

1999 and one from 2000, where the speed capabilities of the Donzi 38Zx were listed as being

78.2, 80 and 83.2 mph, Plaintiff was well aware prior to purchasing it, that the Boat would not be

able to achieve speeds in excess of 90 m.p.h.

   With respect to what Szczensy told Plaintiff about the Boat's speed, at page 77 of

Plaintiff's deposition, the following discourse took place:

   Q. Before you purchased the boat, did you ever ask Donzi, Josh Stickles, or
   anybody down there to show you something in writing that would demonstrate
   that the boat had been tested and run at the speeds that you were looking for?

   A. No.

   Q. Either by Donzi or anybody else?

   A. No.

   Q. Why not?

   A. I was told by sources that it would do it, and I believed them.

   Q. What sources are you talking about.

   A. Josh Stickles and The Boat Store, Greg.

Id. Based upon these statements, there is a genuine issue of material fact as to whether Szczesny

assured Plaintiff that the Boat could achieve speeds in excess of 90 m.p.h.

   To support their argument that Plaintiff knew that the Boat could not reach the speeds

stated in the Donzi brochures, the Donzi Defendants cite to the following testimony from

Plaintiff's deposition:

   Q. Let's talk about speed. What research did you undertake prior to making a
   decision to purchase the Donzi ZX 38 [sic.] concerning its speed?

   A. It was the research of the other boats and the POWERBOAT magazine where

12

they had tested the Donzi.

Plaintiff's Deposition, p. 68.

In his Opposition Brief, Plaintiff contends that the contents of these magazine articles "cannot be deemed to trump the express representations made by Donzi and its employees and/or agents to Mr. Mertz regarding the maximum speed of the boat." Plaintiff's Opposition Brief, p. 9.

Viewing the facts in evidence in a light most favorable to Plaintiff, we find that it is a question of fact for the jury to decide what effect the contents of the two Powerboat Magazine articles read by Plaintiff prior to his purchase of the Boat might have on Plaintiff's breach of warranty claims.

For all of the above-stated reasons, the Donzi Defendants' motion for summary judgment on Plaintiff's breach of warranty claims is denied.

### B. Legal Analysis of Plaintiff's Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Claims.

Plaintiff also contends that the Donzi Defendants committed "[u]nfair or deceptive acts or practices" in violation of the subsection (v), (vii), (ix), (xiv) and (xxi) of section 201-2(4) of Pennsylvania's UTPCPL. Section 201-2(4) provides in pertinent part:

> As used in this act.
>
> (4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:
>
> . . .
>
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

13

. . .

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . .

(ix) Advertising goods or services with intent not to sell them as advertised;

. . .

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

. . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4) (v), (vii), (ix), (xiv) and (xxi). The Donzi Defendants move for summary

judgment on all of Plaintiff's UTPCPL claims against them.

### 1. Plaintiff's 73 P.S. §201-2(4) (v), (vii) and (ix) UTPCPL claims.

With respect to Plaintiff's claims under 201-2(4) (v), (vii) and (ix) of the UTPCPL,

subsections which address false advertising, the Donzi Defendants contend:

> Plaintiff has failed to proffer any evidence that would indicate that he relied on any alleged false advertising. There is no representation in either the 2000 or 2001 brochure that the Donzi 38ZX would travel at speeds of 100 miles per hour without the optional power equipment. Further, the *Powerboat Magazine* articles which Plaintiff admits to have reviewed, do not indicate that the Donzi 38ZX could travel at speeds any higher that the 83 miles per hour. This was later confirmed by Plaintiff in a test run of the boat. In addition, Plaintiff admits to having noticed the warranty disclaimer language on the May 8, 2002 Purchase Agreement and was available to read the limited warranties but failed to do so.

Id. at p. 18.

14

In response, Plaintiff explains that "[t]he gist of plaintiff's claim is that defendants falsely advertised that the boat was 'capable of speeds in excess of 90 miles per hour' or '100 miles per hour (with optional power)' and that the headroom in the cabin portion of the boat was six feet, three inches." Plaintiff's Opposition Brief p. 20. Plaintiff continues:

> [i]n the instant case it is undisputed that Mr. Mertz, prior to purchasing the boat, reviewed advertising brochures provided to him by both Donzi and The Boat Store which stated that the boat was "capable of speeds in excess of 90 miles per hour" or "100 miles per hour (with optional power)" and that the headroom in the cabin portion of the boat was six feet, three inches. Moreover, at his deposition, Mr. Mertz testified that he specifically requested that Donzi provide whatever "optional power" was necessary in order for the boat to achieve the speeds represented in the literature. He further testified that speed and size were his two primary concerns when deciding which boat to purchase. Both Greg Szczesny, the owner of the Boat Store, and Josh Stickles, a Donzi employee, assured Mr. Mertz that the boat would live up to the representations in the Donzi literature. Finally, in his Response to Defendants' Request for Production of Documents, Mr. Mertz identified the advertising brochures and the representations contained therein as information he relied upon in deciding to purchase the Donzi 38ZX.

> There is ample evidence in the record establishing that the boat is incapable, without substantial modification, of achieving speeds in excess of 90 mph and that headroom in the cabin portion of the boat is only 5 feet, eleven inches. Accordingly, the representations in the Donzi literature regarding the size and speed of the boat are false and/or deceptive. Mr. Mertz, as discussed above, relied on these false representations in purchasing the boat and, as a result of his reliance, suffered damages in an amount equal to the difference in the value of the boat as accepted and the value it would have had had it conformed to the representations in the Donzi literature.

Id. at p. 21-22 (internal citations to exhibits omitted).

Based upon Plaintiff's deposition testimony and his Responses to Defendants' Request for Production of Documents, we first find that there is a genuine issue of material fact as to whether Plaintiff's relied on the representations made in the brochures as to speed and headroom height of the Donzi 38ZX motorboat in making his decision to purchase the Boat. Second, we have already held that it is a question of fact for the jury to decide what effect, if any, the

15

contents of the Powerboat Magazine articles read by Plaintiff prior to his purchase of the Boat,

had on his decision to purchase the Boat, in light of the information he received from other

sources. Finally, for the reasons discussed in detail above, we have held that the Donzi

Defendants can not rely the limitation of warranty language contained on the back of the

Purchase Agreement. Accordingly, the Donzi Defendants' motion for summary judgment on

Plaintiff's 73 P.S. § 201-2(4) (v), (vii) and (ix) claims against them is denied.

### 2. Plaintiff's 73 P.S. § 201-2(4) (xiv) UTPCPL claim.

The parties agree that a violation of 73 P.S. § 201-2(4)(xiv) is essentially a violation of an

express warranty. Plaintiff alleges that the Donzi Defendants violated 73 P.S. § 201-2(4)(xiv)

when they breached an express warranty regarding the ability of the Boat to achieve speeds in

excess of 90 m.p.h. See Plaintiff's Opposition Brief, p. 22. The Donzi Defendants argue that

Plaintiff has failed to establish that they breached any warranty and that this claim must fail

because they provided an opportunity to cure any defects, therefore fulfilling their obligation

under the warranty. Defendants' Supporting Brief, p. 19.

We have already concluded, for the reasons stated *supra.*, that viewing the evidence in a

light most favorable to Plaintiff, the statements in the Donzi brochure about the speed of the

38ZX boat constitute an express warranty and that Defendants did not effectively disclaim or

otherwise limit this express warranty. Nor has the Court found any evidence in the record from

which it can conclude that Defendants offered to fix the Boat so that it could achieve a speed in

excess of 90 m.p.h. Consequently, the Donzi Defendants' motion for summary judgment on

Plaintiff's 73 P.S. § 201-2(4)(xiv) claim against them is denied.

16

### 3. Plaintiff's 73 P.S. § 201-2(4)(xxi) UTPCPL claim.

Finally, concerning Plaintiff's claim under §201-2(4) (xxi) of the UTPCPL, the Donzi

Defendants argue: "Plaintiff has failed to establish a genuine issue of material fact that he relied

on statements or omissions by the Defendants that rise to the level of fraudulent activity.

Furthermore, Plaintiff was well aware of the warranty language issued by Donzi which

specifically disclaimed any representations in the Donzi brochures. (See Szczesny Dep., pp. 22-

23 . . . )." Defendants' Supporting Brief, pp. 19-20.

In response, Plaintiff contends: "contrary to the assertion in defendants' Memorandum of

Law, to establish a claim for false advertising under the 'catchall' provision of the UTPCPL,

section 201-(4) (xxi), a plaintiff need not establish that the seller intended to induce a reliance on

the part of the plaintiff, but merely that the plaintiff has suffered a harm as a result of his or her

reliance on the seller's false or deceptive statements regarding the product." Plaintiff's

Opposition Brief, pp. 20-21 (internal citations omitted).

We turn first to the Donzi Defendants' argument that Plaintiff must prove that he relied

on statements or omissions by the Defendants *that rise to the level of fraudulent activity.* Where,

as here, the Pennsylvania Supreme Court has not explicitly resolved an issue, we must look to

the decisions of the intermediate state courts for guidance. As explained long ago by the United

States Supreme Court in Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176 (1940):

"The highest state court is the final authority on state law, but it is still the duty of the federal

courts, where the state law supplies the rule of decision, to ascertain and apply that law even

though it has not been expounded by the highest court of the State. An intermediate state court in

declaring and applying the state law is acting as an organ of the State and its determination, in

the absence of more convincing evidence of what the state law is, should be followed by a

federal court in deciding a state question." Id. at 177-78, 61 S.Ct. at 178 (internal citations and footnote omitted). Here, interestingly, there is a split between the Pennsylvania appellate courts as to whether a plaintiff alleging a §201-2(4) (xxi) violation must establish the elements of common law fraud.

In Com. ex rel Corbett v. Manson, 903 A.2d 69, 73-74 (Pa. Commw. 2006), the Pennsylvania Commonwealth Court held that in order to establish a violation of 73 P.S. §201-2(4)(xxi), a plaintiff need not establish the elements of common law fraud to prove a 201-(xxi) claim. In so holding, the court explained:

> [p]rior to the 1996 amendments to the Consumer Protection Law, section 2(4)(xxi) merely prohibited "fraudulent conduct," and a plaintiff had to establish the elements of common law fraud to prove a claim. *Commonwealth v. Percudani,* 825 A.2d 743 (Pa.Cmwlth.2003), *amended,* 851 A.2d 987 (2004). The 1996 amendments revised the provision to prohibit "fraudulent or deceptive conduct." *Id.*
>
> Even after the 1996 amendments became effective, our superior court has continued to interpret section 2(4)(xxi) to require that a plaintiff establish the elements of common law fraud to prove a claim. *Id.* However, this court has rejected that interpretation because: (1) the statute is to be liberally construed to effectuate the legislative goal of consumer protection; (2) the legislature's addition of the words "or deceptive" signals a less restrictive interpretation; and (3) maintaining the pre-1996 requirement would render the words "or deceptive conduct" redundant and superfluous, contrary to the rules of statutory construction. *Id.*
>
> The question, then, is not whether a company or corporate officer engaged in conduct that was intended to deceive consumers. Rather, the question is whether the company or corporate officer engaged in conduct that might be "deceptive to the ordinary consumer."*Id.* at 746.

Id. at 73-74 (internal footnotes omitted).

To the contrary, in Colaizzi v. Beck, 2006 Pa. Super. 41, 895 A.2d 36, 39 (2006), the Pennsylvania Superior Court held that in order to establish a violation of 73 P.S. §201-2(4)(xxi), a plaintiff must prove all of the elements of common-law fraud, these elements being (1)

misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.

We find the analysis of the Commonwealth Court in Com. ex rel Corbett v. Manson to be the correct interpretation of what must be proven in a §201-2(4) (xxi) claim. Accordingly, contrary to the Defendants' argument, Plaintiff does not have to prove that he relied on statements or omissions by the Defendants that rise to the level of fraudulent activity.

Turning to the remainder of the Donzi Defendants' arguments regarding Plaintiff's §201-2(4) (xxi) claim, we find that based upon Plaintiff's deposition testimony and his Responses to Defendants' Request for Production of Documents, there is a genuine issue of material fact as to whether Plaintiff relied upon the representations made in the Donzi brochures about the height of the headroom in the cabin and the speed of the 38ZX boat. Further, it was the Donzi Marine Limited Warranty that contained the following relevant language: "ADVERTISING REGARDING ANY PERFORMANCE CHARACTERISTIC OF THE BOAT OR ITS COMPONENTS SHALL BE CONSIDERED AN ESTIMATE ONLY AND SHALL NOT BE RELIED UPON AS EXPRESS WARRANTY OR AS A BASIS OF THE BARGAIN FOR THE BOAT OR ITS COMPONENTS," and as stated above, viewing the facts of record in a light most favorable, Plaintiff did not receive a copy of this warranty until after he purchased and received delivery of the Boat. Therefore, there is a genuine issue of material fact as to whether "Plaintiff was well aware of the warranty language issued by Donzi which specifically disclaimed any representations in the Donzi brochure." Accordingly, Defendants' motion for summary judgment on Plaintiff's 73 P.S. §201-2(4) (xxi) claim is denied.

19

## C. Plaintiff's Magnuson-Moss Warranty Act claim.

Plaintiff's final claim against the Donzi Defendants is for violation of Magnuson-Moss

Warranty Act. The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by

the failure of a supplier, warrantor, or service contractor to comply with any obligation under this

chapter, or under a written warranty, implied warranty, or service contract may bring suit for

damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1) (2003). Thus, the

Magnuson-Moss Warranty Act authorizes consumers to sue warrantors for failure to comply with

any written or implied warranty. Id.

In support of their motion for summary judgement on Plaintiff's Magnuson-Moss

Warranty Act claim, the Donzi Defendants argue:

> Plaintiff cannot recover under the Magnuson-Moss Warranty Act. The warranties
> offered by Defendants/Third-Party Plaintiff meet and exceed the minimum
> requirements under the Magnuson-Moss Warranty Act. In addition,
> Defendants/Third Party Plaintiffs honored these warranties. (See Szczesny Dep.,
> pp. 61-62, Exhibit "C".) Accordingly, based on Defendant/Third Party Plaintiffs'
> compliance with the requirements under the Magnuson-Moss Warranty Act, there
> are no genuine issues of material fact that Plaintiff has failed to prove any
> violation under this Act.

Defendants' Supporting Brief, p. 22. See also Defendants' Reply Brief, pp. 16-17 (same).

In response, Plaintiff explains that his Magnuson-Moss Warranty Act claim is for failure

of the Donzi Defendants, as warrantors, to comply with an implied warranty of merchantability

and an implied warranty of fitness for a particular purpose. Plaintiff's Opposition Brief, p. 24.

"As discussed [above], defendants created, failed to disclaim, and breached each of these implied

warranties." Id. An implied warranty is defined as "an implied warranty arising under State law

(as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier

of a consumer product." 15 U.S.C. § 2301(7). Id.

20

The Donzi Defendants' response in their Reply Brief to Plaintiff's arguments regarding this claim is as follows. First, Defendants argue that they did not breach the warranties Plaintiff argues that they breached because they limited the warranties available to Plaintiff. Defendants' Reply Brief, p. 17. Second, Defendants argue that they offered, pursuant to the terms of the limited warranty, to cure the alleged defects and therefore, there can be no violation of the Magnuson-Moss Warranty Act because case law provides that if an offer is made by a defendant to fulfill the obligations under the warranty, then there is no violation because there would be no ascertainable loss. Id. Finally, Defendants argue that there were multiple times when the Boat Store, in violation of the existing warranty arrangements, approved repairs that Plaintiff himself made to the Boat, without seeking approval from the Defendants and also, The Boat Store paid or credited Plaintiff for work performed on the Boat such that Defendants "never had an opportunity to cure some, if not all, of the alleged defects." Id. at 17-18.

All of the Donzi Defendants' arguments with respect to Plaintiff's Magnuson-Moss Warranty Act claim are premised upon the two Donzi warranties being applicable to Plaintiff's ownership of the Boat. For all the reasons stated *supra.*, the Court has already held that viewing the evidence in a light most favorable to Plaintiff, there is a genuine issue of material fact as to whether these limited warranties are applicable in this case. Accordingly, the Donzi Defendants' motion for summary judgment on Plaintiff's Magnuson-Moss Warranty Act claim is denied.

**D. Conclusion.**

The Donzi Defendants' motion for summary judgment is denied in its entirety. An appropriate Order follows:

21

## **ORDER**

AND NOW, this 6th day of March, 2007, it is hereby ORDERED, ADJUDGED, AND

DECREED that Defendants and Third Party Plaintiffs Donzi Marine Inc. and American Marine

Holdings, Inc.'s Motion for Summary Judgment (Doc. # 15) is denied in its entirety.

It is further ORDERED, ADJUDGED AND DECREED that:

(1) Plaintiff's pretrial narrative statement shall comply with Local Rule 16.1.4A and be

filed within twenty-one (21) days of the Court's filing this Opinion and Opinion. Plaintiff shall

specify the material facts including damages to be proved at trial. Proof of material facts not

specified may be excluded at trial upon objection or by the Court *sua sponte*;

(2) Defendant's pretrial narrative statement shall comply with Local Rule 16.1.4B and be

filed within twenty-one (21) days of the filing of plaintiff's pretrial statement. Defendant shall

specify the material facts to be proved at trial. Proof of material facts not specified may be

excluded at trial upon objection or by the Court *sua sponte*; and

(3) Within twenty-one (21) days of the filing of defendant's pretrial statement, Third-

party Defendant shall file a brief narrative statement meeting the requirements of Local Rule

16.1.4C.

*Maurice B. Cohill. Jr.*

Maurice B. Cohill, Jr.
Senior District Court Judge

22