*Exhibit "F"*

R<7`

## DEALERSHIP AGREEMENT

THIS AGREEMENT between Donzi Marine, a Division of American Marine Holdings, Inc., (herein called "Company", 7110 - 21st Street East, Sarasota, Florida 34243, and

Name: _The Boat Store_
Street: _10190 West Main Rd._
City and State: _North East, PA 16428_
(herein called "Dealer"):

1. **APPOINTMENT OF DEALER.** Company hereby appoints Dealer as a retail dealer and agrees to sell to Dealer and Dealer agrees to purchase from Company, boats, parts, equipment, accessories and related items manufactured by Company and Company labeled clothing (hereinafter referred to as "Products") at prices set forth in published price lists and upon such terms, discounts and/or conditions as are in effect at the time of acceptance by Company of orders from Dealer. Not withstanding any prior written or oral agreement to the contrary, Company reserves the right to appoint such Dealers as Company, in its sole discretion, determines are desirable to serve the market area including, but not limited to, appointment of Dealers for partial segments of Company's product line. Dealer agrees that this Agreement does not constitute the grant of a franchise or franchise rights, nor does it confer an exclusive territory upon Dealer. Dealer acknowledges that it has not been required to, nor has it paid any franchise fee in connection with the execution of this Agreement.

2. **TERM.**
   2.1. This agreement shall be effective upon execution by Company and Dealer, and shall continue thereafter for the remainder of the model year indicated on the signature page. Termination shall not release either party from any sums such party may then owe to the other. Except as aforesaid, neither party shall have any further liability or obligation to the other as a result of any termination, and neither party shall have any recourse for damages against the other which it may suffer by reason of termination or non-renewal of this Agreement. Notwithstanding any prior agreements or course of conduct between the parties, this Agreement shall not be automatically renewed. Should either party have any business relationship with the other party after termination or expiration of this Agreement, such relations shall not be construed as a renewal of this Agreement or as a waiver of such termination, but all such transactions shall be governed by terms identical with the provisions of this Agreement relation hereto unless the parties hereto execute a new agreement superseding this Agreement.

   2.2. Upon termination or non-renewal of this Agreement: (a) Dealer shall cease to be an authorized Company Dealer; (b) Dealer shall pay to Company all sums owing Company by Dealer; (c) Dealer shall continue to be eligible to participate in Company warranty programs as specifically authorized by Company in writing in the manner and time period set forth in such authorization; (d) Dealer shall deliver to Company or its nominee all of Dealer's records with respect to its pre-delivery, warranty, policy and service work; (e) all orders placed by Dealer but not delivered by Company prior to effective date of termination shall be voided, unless Company specifically agrees, in writing, to fill a part or all of the orders; (f) Dealer shall deliver to Company or its nominee all orders or customer deposits for Company products that have not been delivered and that Company is not obligated to deliver to Dealer; and (g) Dealer shall comply with paragraph 5, except as is set forth in this paragraph, neither shall have recourse against the other for the termination or non-renewal of this Agreement.

3. **DEALERSHIP OPERATIONS.**
   3.1 **Responsibility for Management.** (a). It is the responsibility of Dealer to provide personal services by exercising full managerial authority for Dealer's conduct of the operations contemplated by this Agreement (herein called Dealership Operations). Dealership Operations include the sale and service of Products and any other activities undertaken by Dealer related to Products, including new or used sales, service, finance and insurance operations whether conducted directly or indirectly by Dealer. (b). Dealer shall conduct all of its business, including, but not limited to, sales, service and warranty service in a manner which is consistent with the positive public relations, reputation, integrity and customer satisfaction of Company and its Products in the sole discretion of the Company. Dealer shall pay all of its own expenses. (c). Dealer shall maintain a close working relationship with Company which shall include transmittal of all correspondence concerning Products, sales, inventory or service as requested by Company. Dealer agrees to provide to Company within forty-five (45) days after the close of Dealer's fiscal year or at other times upon request of Company, financial statements (audited, if available) covering such fiscal year, and to consent to full and open exchange of financial information concerning Dealer, between Company and any financial institution, or company which finances Dealer's boat inventory.

   3.2. **Dealership Location and Premises.** Dealer shall provide facilities (herein called Dealership Premises) at the Dealership Location that will enable Dealer to effectively perform and conduct its Dealership Operations. The Dealership Premises shall be satisfactory as to appearance and layout, properly equipped for the conduct of the Dealership Operations and substantially in accordance with Company's recommendations for display of Products at the Dealership Location.

   Dealer will conduct the Dealership Operations only from the location (herein called Dealership Location) approved for that purpose by Company and will not, either directly or indirectly, establish any place of business for the conduct of any of its Dealership Operations except at the Dealership Location referenced at the top of this Dealership Agreement. If Dealer desires to make any changes in the Dealership Location or Dealership Premises, Dealer agrees to give Company prior written notice so Company can discuss the effect of the proposed change with Dealer. No change in Dealership Location or in the use of Dealership Premises in Dealership Operations will be made without the written approval of Company. Dealer shall install and maintain in appropriate places at the Dealership Premises Product and service signs as required or approved by Company, and such other signs as Company and Dealer agree are appropriate to identify the Dealership Operation. The requirements of the Agreement as to the facilities to be supplied by the Dealer, as to the conduct of the business of dealing in Company Products, and as to relationships between the Dealer and others are intended only to promote the general purposes of this Agreement as outlined at the beginning hereof. This Agreement contemplates that the Dealer shall acquire the Dealer's own place of business, facilities, and equipment in accordance with the Dealer's own discretion and shall purchase and resell Company Products as the Dealer's own, all in conformity with the requirements and limitations herein specified but otherwise in the Dealer's own discretion. Nothing herein contained shall impose any liability on the Company for any expenditure made or incurred by the Dealer in preparation for performance or in performance of the Dealer's obligations under this Agreement.

   3.3. **Sales and Marketing.** (a). Dealer's Area of Primary Responsibility (hereinafter APR) is defined on Exhibit "A". Dealer shall confine all sales and marketing effort to Dealer's Area of Primary Responsibility.

   (b). Dealer shall insure that each retail purchaser to whom Product is sold receives proper service on the Product which is used outside of Dealer's APR. Company, at its discretion, shall have the right to charge (as a debit against Dealer's accounts or by cash payment), and Dealer agrees to pay to Company, a sum equal to 5% of the total invoice amount paid by Dealer to Company for the particular Product which, within the first 12 months after sale of Product by Dealer, is primarily used outside of Dealer's APR. This charge shall be used by Company to offset, in whole or part, the warranty expenses associated with that Product, and the service burden placed upon Company or another AMH dealer.

   (c). Dealer shall actively and effectively sell Company's entire product line and capture the maximum market share attainable in Dealer's APR.

   (d). Dealer shall actively and effectively display, advertise and promote, in a manner satisfactory to Company, through Dealer's own advertising and sales promotion activities, the purchase and use of new Products manufactured by Company and maintain a high standard of ethical advertising and sales activities in promoting its Dealer Operations. Dealer's sales personnel shall be well trained, knowledgeable of Products, and participate in Sales Training Programs put on by the Company.

14. **ENTIRE AGREEMENT; GOVERNING LAW; SEVERABILITY.** This agreement contains the entire agreement between the parties with respect to the subject matter hereof and Company has made no other promises or representations to Dealer, orally or in writing, relating to the subject matter of this Agreement. This Agreement cancels and supersedes all previous Agreements between the parties that relate to any matter referenced herein. This agreement may be amended only as may be agreed upon in writing by Company and Dealer and shall be governed by the laws of Florida. If any provision hereof is held to be invalid or unenforceable for any reason, the validity or enforceability of all other provisions shall not be affected thereby. If performance under this Agreement is illegal under a valid law of any jurisdiction where such performance is to take place, the performance will be modified to the minimum extent necessary to comply with such law. Failure on the part of either party to enforce any term of this Agreement shall not constitute a waiver. Any arbitration or court proceeding commenced by either party arising from their dealership relationship shall only be brought in the State or Federal Courts having venue in Sarasota County, Florida. Except as specifically provided herein, all terms of the Agreement shall remain in effect, to the extent that any terms of this Agreement conflicts or is inconsistent with any mandatory term of the law of the state where Dealer conducts business, the mandatory term of such state law shall control, and any terms of the Agreement which are inconsistent or in conflict therewith shall be null and void ab initio. In all other respects, the Agreement remains valid as executed by the parties. The provisions of paragraphs 5, 6, 7, 8, 10, 11, 13, 14, 15 and 16 shall survive the expiration or termination of this Agreement.

15. **DISPUTES.** Except as otherwise specifically set forth herein or agreed to in writing by the parties, any action, dispute, claim or controversy between or among the parties, whether sounding in contract, tort or otherwise ("Dispute" or "Disputes"), shall be resolved by arbitration as set forth below and shall include all Disputes arising out of or in connection with (1) this agreement or any related agreements or instruments, (2) all past, present, and future agreements involving the parties, (3) any transaction contemplated hereby, and all past and future transactions involving the parties, (4) any aspect of the past, present or future relationships of the parties. Such disputes shall be resolved by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association (AAA). In the event of any inconsistency between such Rules and these arbitration provisions, these provisions shall supersede such Rules.

Judgment upon the award rendered by arbitration may be entered in any court having jurisdiction.

16. **NOTICE.** All notices permitted or required hereunder may be given to the other party in writing by FAX transmission, U.S. mail, or commercial courier service addressed or directed at the address given above. All notices shall be deemed to have been given where mailed, sent or transmitted.

## ADDENDUM

Exhibit "A" - Area of Primary Responsibility

1. It is agreed by the Company and Dealer that the Area of Primary Responsibility will consist of the following state(s) or county(s) in their entirety(s) _____

or described by the attached Exhibit "A" map.

2. Boats not included in this appointment:

Exhibit "B" - Dealer Buying Program

Semi-Annual Projections
  1st half (July - December): _____
  2nd half (January - June): _____

*[handwritten: GULF EAST to BUFFALO, 1/2 way to CLEVELAND to include Pittsburg.]*

It is agreed by the Company and the Dealer that these are the minimum performance goals as measured by wholesale dollar volume during the model year.

Donzi Marine,
a Division of American Marine
Holdings, Inc.

By: _____
Title: _____
Date: _____ 11/99

MODEL YEAR: 2000
DEALER: The Boat Store
By: _____
Title: _____

(✓) corporation
( ) proprietorship
( ) partnership

Date: 8-25-99